Good morning, may it please the court. My name is Elizabeth Daly and I'm here today to represent James Sanderson. He's a federal prisoner who was denied the opportunity to participate in the Bureau of Prisons residential drug treatment program known as RDAP. By statute, Congress requires the Bureau of Prisons to provide residential drug treatment to all prisoners who meet two simple qualifications. Well, to all eligible prisoners, which doesn't necessarily mean all, correct? It defines eligible prisoners, and so all with those two criteria. But doesn't it leave to the Bureau the determination as to who is eligible? No, because the statute defines who is eligible. That determination can't be made by the Bureau. The Bureau does have discretion. If the prisoner, such as your client, is unable to complete all three steps of the RDAP program, doesn't that render him ineligible under the BOP regulations? It renders him ineligible under the BOP regulation, but he's entitled to that treatment because he meets the statutory definition of an eligible prisoner. And direct me to the language that you say supports your position. In the statute, Your Honor? Yes. Subsection E, subsection 1C, which states that the Bureau of Prisons shall provide residential substance abuse treatment, subsection C, for all eligible prisoners. And then going down to subsection 5, that provides the definition. So they would have to provide it for prisoners on death row? If that person, yes, is determined by the Bureau of Prisons to have a substance abuse problem and is willing to participate. So under your proposed interpretation, the Bureau of Prisons would be allowed to determine who is eligible and not eligible? The Bureau of Prisons' discretion is limited to determine who has a substance abuse problem. So if you're in there for one month, you're eligible? You would be eligible because if you are determined to have a substance abuse problem and willing to participate, my assumption would be that a person – So you're saying they would have no discretion to say somebody that's here for only a month or someone who's on death row may not be able to complete this, but that doesn't matter? Well, it doesn't matter as far as the statutory duty. This court would not have the jurisdiction to review an individualized determination that's based on discretionary decisions. That's not what we have here. But let's go back to Judge McEwen's hypothetical. If the sentence is only a month and the RDAP program in Step 1 requires in-house 500 hours of intensive treatment, it's physically impossible for him to do 500 hours in one month. So would he still be an eligible prisoner under your definition of that term? If the person wanted to stay in and have treatment, I presume in that situation the court could look at who was eligible? Yeah, you don't get to stay extra, and hardly anybody wants to. Right. So in that situation, the person is physically unable to complete the portion of the treatment that is required by the statute, not the portion that the Bureau of Prisons – Well, the statute doesn't define the treatment, does it? The statute requires the Bureau of Prisons – it defines residential treatment as – and I'm looking at subsection 5A of the statute, E5A. It defines residential substance abuse treatment to mean a course of individual and group activities and treatment lasting at least six months. That gets you to the second point, is you would have to at least read the shall in conjunction with the remainder of the statute, right? Assuming there's some level of ambiguity or discretion, it's only to administer and implement the program consistently with the statutory duty to provide that level of care to that subset of prisoners. But in our hypothetical, he can't complete even the residential portion, can he? So stepping back for a moment, analyzing the statute, if the Bureau of Prisons made an individualized decision that a person in that situation could not physically complete what's required by the statute, the court may find that that's a reasonable construction and a reasonable area for Bureau of Prisons discretion. That's not what we have here. Why is it unreasonable for the Bureau to determine in its experimentation and its history of more than 10 years with the program that a successful completion of the program includes more than just the 500 hours? It also includes the second component, which is, I guess, the classroom portion within the prison, and then the third component being follow-up care in a community-based halfway house or wherever the inmate is located after he is sent to the community. The Bureau of Prisons would have that discretion under the subsection 2, where it has discretion to determine what successful completion is. I guess that's a problem I'm having with your argument, because in our hypothetical, a prisoner, although he may well want the treatment, would not be considered eligible if he couldn't complete the residential portion. And the problem with your client is he can't complete the community-based aftercare because he's got detainers and he's going to be turned over to the state of California. The problem is that the Bureau doesn't have discretion to require community-based aftercare. The Bureau has a duty to provide the initial component to all eligible prisoners. So we don't care if the program is effective as long as it's made available to everyone who wants to enroll in it? That can't be what Congress said. If there was an administrative record that said people – and, you know, in fact, I'm going to retract that answer. The statute is clear. Bureau of Prisons has a duty to provide six months of residential treatment. The remainder has been added on to that by the Bureau of Prisons. Now, if there was an administrative record that says only six months is non-efficacious, that would be a different situation and the court's Chevron review would be different. I thought that's what we have in the administrative record. The reason why the Bureau wanted the aftercare was because of the risk of relapse, and we're trying to reduce relapses by following up with community-based aftercare. In essence, we're trying to make the program more effective. So how does that vary with congressional intent that we provide meaningful drug treatment for people who have a drug problem and are willing to do something about it? There's no administrative record that six months of treatment is meaningless, and certainly I think it would be difficult to square that with the statute's statement that what we shall require is six months of treatment. Didn't the Bureau say, based on comments from the medical community and drug treatment providers, that it was more effective if they had this aftercare? They said to ensure optimal results. More effective is not the same thing as not worthwhile, which is what you have to get to to exclude participation whatsoever. What do we do with the statutory language about aftercare? Is that superfluous in the statute? Aftercare should be provided, and what the American Psychiatric Association has said is that institutional aftercare can ensure good results. The Bureau of Prisons does not have the same level of expertise in treatment results as the American Psychiatric Association. But if they had asked for this program before he was executed, the Bureau of Prisons would have to give it to them. Your Honor, what I'm challenging in this case is the categorical rule, and if the categorical rule said no inmates on death row shall be considered for participation in residential treatment, then that would violate the clearly expressed intent of the statute. What about Ted Kaczynski, the Unabomber, who's in life imprisonment without the possibility of parole? If he wants drug treatment, he can get it? There might be situations where, on an individualized basis, the Bureau of Prisons could say this particular prisoner's security level within the institution is not consistent with being able to safely administer the residential program that the statute requires. That would be different than having a categorical exclusion saying nobody in that circumstance is eligible. Let me ask you then about jurisdiction, because you seem to have split the program into two parts, and that is some drug treatment and then the possibility of the one-year reduction if you successfully complete and go through the aftercare and everything. We've already made a determination in McLean as to the second part and that there was at least the assumed jurisdiction under 2241, but once you split the program and you say prisoners are entitled to drug rehabilitation care or treatment, how does that come under 2241? Why isn't that a conditions of confinement claim? This court has exercised 2241 jurisdiction, even while finding that there's no liberty interest. So, for example, in Close v. Thomas, that case involved waitlist priority on the RDAP participation list, and the court held that it violated or that it did not violate the statutory authority. So 2241 doesn't require liberty interest. What it requires is unlawful execution in violation of federal law. Unlawful execution of? The sentence. In this case, the sentence requires residential treatment, and that's not being provided. Well, I thought the challenge was to the incentive that is available if the program is successfully completed. What he really wants is a year off of his sentence, doesn't he? There are two separate challenges. The challenge to the participation has jurisdiction separate from the challenge to the early release incentive. But I guess the question Judge McKeown is asking you is under 2241, if we're looking just at the challenge to the program itself, that doesn't have anything to do with the length of his sentence, does it? 2241 does not require a challenge that's related to the length of the sentence. What it requires is unlawful execution of a sentence. Moreover, in order to be considered for early release. So is your position that the execution consists of participation in the residential inpatient program, and that's what he was sentenced to when he was sentenced for whatever his crime of conviction was? That one of the requirements as a condition of his sentence is that the Bureau comply with 3621. This is no different from the court's exercise of jurisdiction in Close. I can see that I'm out of time. Well, I guess I'm having some trouble with that, because remind me in Close did the court said that that particular ordering fell under 2241? It was a challenge under 2241. But was the jurisdiction addressed in that case? I don't believe it was specific. That's what my concern is. It was distinguishing from Reeve. So it did address the individualized determination in Reeve. It didn't discuss the statutory interpretation of 2241. That's what concerns me is a lot of times, and the Supreme Court does it too, is they just decide a case. But it seems to me that to some degree, once you split your, quote, cause of action into these two things, we have to look at jurisdiction for each one. Do you agree with that proposition? I agree. My response to that, if the court determines that length of the sentence is required for 2241 jurisdiction, is that without participation, you don't even get to the second part of consideration for eligibility for early release. But then the alternative to that, the flip side of that argument, then, is you don't even get to admission unless you can get to completion. So, in other words, if the VOP has the authority to figure out what the end game is, then it ought to have the same authority to figure out what the beginning game is. So you kind of want it both ways. And maybe I'm mishearing you because you want him to get in, and it's like, I can get in, I don't know if I can get out under these conditions. It's like the flip of Hotel California. But then you turn around and say, but these are merged for purposes of jurisdiction. So tell me why there's jurisdiction under that scenario. So there's several responses. I think that the fundamental response is that 2241 doesn't require a liberty interest. There's no requirement that his sentence necessarily be shortened in order to get jurisdiction under 2241. The second response is that, yes, the court can sometimes just decide a case without considering the jurisdictional question, but here we have many, many cases that are deciding residential drug treatment issues, and whether they're explicitly or implicitly tied to early release, the court's always found jurisdiction. To the extent that you're challenging the categorical determination that people with detainers are not eligible, why doesn't 18 U.S.C. Section 3625 preclude your APA challenge to the categorical exclusion? That was decided in Abbott that 3625 doesn't prevent challenges that regulation was promulgated in excess of statutory authority or in violation of the Administrative Procedures Act. What does that provision cover if it doesn't cover a challenge? It covers individualized determinations of eligibility. So in Reeb, the individual had been participating in residential treatment and he was kicked out. He argued that getting expelled violated the program statement. The court said, this program statement is not law. It doesn't have the effect of law. The statute says it applies to making any determination, decision, or order. It doesn't say any individualized determination or order. What the court has held in Abbott and in other cases, in Reeb and in Close, is that that only means discretionary determinations, individualized determinations that are based on discretion. I think Abbott is directly controlling here. All right, thank you. Good morning. May it please the Court. My name is Natalie White. I'm an Assistant United States Attorney, and I represent the Federal Bureau of Prisons. If the Bureau of Prisons transferred Mr. Sanderson to a halfway house today, he could be arrested and placed in a California jail tomorrow. I think that Petitioner is asking the Bureau of Prisons to ignore everything that it has based these programs on. The purpose of the programs are not just the incentive. It's not just early release. It's the actual drug treatment portion of the program that sometimes gets forgotten. Well, no, he says that that isn't forgotten. He would like that. That's exactly what he wants. He doesn't care about the halfway house. He just wants, while he's in prison, to get the benefit of the drug treatment program consistent with his sentence. Well, one thing that was really helpful with some of these changes that were made recently to the drug treatment programs is the RDAP program is not the only drug treatment program in the Bureau of Prisons. There are several, in fact. There's a very similar one, the non-residential treatment program, which is nearly identical to RDAP without that residential portion. There are also individualized drug treatment programs that can be tailored to each individual inmate, whether they are learning based through video, they have things that can be done in the SHU special housing unit, all to treat drug treatment problems. But none of them provide the carrot, do they? The only one that gives you the credit is the RDAP program. That's correct. If you are looking for the incentive, then you're talking about the RDAP program. What he really wants is a year off of his sentence. I mean, I'm not questioning his good faith in trying to address his drug problem, but, I mean, the only one that really means anything in terms of length of incarceration is the RDAP program. It does seem to encourage many more inmates to sign up for the drug abuse program if they have that incentive, where here, if they agree that McLean was accurate in saying that the early release is valid, then he is left with only participation, which is what they had at that time. And in the end, you're talking about someone who will not be able to complete the RDAP program, and in place of others who are waiting still, who would be able to complete the program. This program has a long backlog, does it not, of inmates who are trying to get in, but they just don't have enough slots.  there are substantial waiting lists for the program, yes. Are you saying that, because it's, are you saying that the shall portion of the statute is actually complied with because they do get treatment, they just might not get this treatment? Well, treatment is available if they're willing to participate. The shall portion we are not arguing with, and we are reviewing, this is shall provide this treatment for eligible prisoners, and the eligibility requirement is something that the Ninth Circuit has already determined isn't within the discretion of the BOP to decide. And when you look at that statute at 3621, you can look at the portion addressed by Petitioner, which talks about the two-part definition of eligibility, or eligible. There's an additional part, if you look at another section of 3621, that talks about the Bureau of Prison's duty to report to Congress how they have actually defined eligibility, and to explain that, how they have defined and designed the programs that they're talking about. There's a lot of discretion implied within the 3621 statute. Is the R in RDAP stands for residential? That's correct, Your Honor. Does that mean inside the prison? That's correct, Your Honor. It refers to the first component of the program, where actually those inmates are housed all together in a particular unit and have a lot of group programming. That's essential to the success of that program. I mean, it functions essentially like the Sex Offender Treatment Program back in North Carolina, does it not? I think you could draw some comparisons. I'm just talking about the housing. I mean, they have a special housing unit, which is just inmates who are in the RDAP program within the prison complex. That's correct, Your Honor. There are only a limited number of beds available, and the RDAP program is not available in all of the 129 prisons in the federal prison system. That's correct, Your Honor. This is something the Court earlier addressed also, jurisdiction, and it also addressed the Reeb argument and whether or not Abbott applies, whether or not Close applies. And I do feel like Petitioner is trying to carve out or cut away the discretionary individualized determinations that occur in this case, because there are some that it's very specific to detainers. There is no categorical rule that Petitioner can point to that says all inmates with detainers cannot go to a CCC or to a community correction. That does not exist. In fact, the Bureau of Prisons Policy actually says that inmates with detainers ordinarily may not be able to go to a CCC. And then Bureau of Prisons Memorandum internally have advised that a reviewer is required with the unit team. They may have someone with a detainer who may or may not be able to go. That unit team within the institution then has to contact outside local authorities to find out whether or not these detainers are actually going to be acted on. This is an individual, very personalized process that's done even to determine whether or not a CCC placement. So the determination of eligibility based on the presence of detainers is not absolute. That's correct, Your Honor. There's a lot of discretion, and that is within the language of Bureau of Prisons Policy. Do you know if that happened here with respect to Mr. Sanders? No. In this case, actually the process was followed all the way down to the memorandum where this inmate was found to have several detainers. At first they were just pending. When the unit team contacted local California authorities, they actually confirmed absolutely they planned to execute these detainers. If this inmate was sent to a halfway house, we would have to contact California authorities. He could be arrested on his way to work. He would lose his job. He would likely fail the program. I thought if Mendocino County confirmed that they were going to enforce the detainer, they would just come and pick him up whenever he was ready for release, would they not? Well, that's part of the enforcement. But if we are to release him to the community, which is what occurs, not release him, but actually transfer him to a community confinement center for the purpose of RDAP, that would be releasing him into the community. We would have to notify the local authorities that he would be. And what you're saying is that in some cases because of the length of the prison sentence, by the time that the Bureau of Prisons tells California he's ready for pickup, the jurisdiction of California may say, well, the bench warrant's been recalled or we don't have the funds to pay, we're not going to execute the detainer. Well, the contact with the local authorities is done at the time of the RDAP request for admission. So it's done close in time. It's something that the inmate also knows is something he's got to keep up with. A lot of times in these cases we have a public defender or a prior attorney who will follow up and try and get those detainers quashed. In this case, Mr. Sady acknowledged that that was not likely, and California acknowledged the same thing to the Bureau of Prisons. So, I mean, it's discretionary in the sense that you're going to find out if he has a detainer, but if he has an executable detainer, then he isn't he excluded under the regs? Actually, it is a case-by-case analysis, Your Honor. It's very interesting the way that it works. Some jurisdictions will actually lodge a detainer and then decide or plan to not actually enforce it. In fact, at a very recent habeas petition where we actually had an ICE detainer, the unique one for a Vietnam citizen where when we contacted ICE, it was more of a formality to place a detainer. They had no intent on actually executing that detainer. Now the Bureau of Prisons is weighing whether or not that detainer is something that's actually going to hold the inmate and prevent him from applying to a CCC or other programming. Well, to the extent that he's challenging the program as a whole and whether in his interpretation detainers are automatically excludable, would that program, because it includes both the placement in the program and also the possibility that one year be reviewable by us under 2241? You're saying that if the program did include an automatic absolute, you cannot participate with a detainer if it was a pure categorical decision, something like you saw in McLean? In that case, potentially, and that is not the position of the BOP that there is a categorical exclusion, potentially if you do consider this a categorical exclusion under McLean, it's already been decided that this is appropriate, this is permissible by the Bureau of Prisons under the authority of 3621. So the short answer to my question would be, yes, there's jurisdiction under 2241. Oh, no, Your Honor. That's one of our alternative arguments. It's something that you mentioned earlier. It's not addressed by several courts. Although Reeb is a strong decision for the Bureau of Prisons, it's true that jurisdiction was not addressed. Many courts will address in passing that, you know, there is no liberty interest in either participation in ARDAP or the early release benefit. However, they will go on to decide some reviews of the statutes and program statements involving it. But if we step back to the original jurisdiction and the liberty interest, if we're talking about just participation, there is no liberty interest if this inmate does not have the early release that he can rely on. What if he's sentenced and treatment under this section is part of his sentence? Is that right? Recommended as part of his sentence? Yes. Sure, yes. Then why wouldn't 2241 kick in as a basis for jurisdiction? Well, for 2241, this is a habeas petition where we're talking about expedited review, 20-day review, and often sooner than that, 10 days. We're talking about someone who has potentially this liberty interest at stake, that their sentence could necessarily be shortened by determination of the outcome of this habeas petition. And yet we are coming forward with these large civil rights types, APA actions, with a 20-day response time, and it doesn't make any sense. It's an interesting scenario. He has alternative grounds for his challenge. He has Section 706, and then he also has 2241. And you're saying it's, is it a 1983 action? Could he bring it as a 1983 action? Or a Bivens? I would argue that it is not a 1983 or Bivens-type action. More of a ---- So it's basically a tough luck situation? There's actually no jurisdiction in any Federal court to take a look at whether or not he can get in or out of the program? Or whether the program as a whole violates the statute? We have not seen him in that form. We have had prisoner cases brought to us independently on a pure APA-type review or constitutional violation analysis, trying to find jurisdiction that way. But as far as a habeas 2241 position, it does seem inappropriate when you are just challenging your RDAP participation or early release eligibility when those things are not guaranteed. Well, he ---- I think he's challenging, he would probably bring himself, at least for purposes of jurisdiction, under McLean, right? And again, McLean does not address the jurisdictional argument. However, it does address the issues that are before the Court now. But this is a ---- Definitely, as far as Reeb applies in this case, we are talking about an individualized review by the Bureau of Prisons in order to make this determination that is not categorical. So Reeb should apply as well. I see I'm out of time. If you have any other further questions? Thank you. We used up a lot of time for questions, and you used up a lot of time for argument. But I'd like to give you some time for a rebuttal. Ms. Morris, if you could put another minute on the clock, please. I think the best use of my time here is to mention that this is not a categorical or this is not an individualized determination. The only individualized determination is that he's not eligible for community corrections. Once you get that, the challenge regulations ---- Is it not in the sense that he's had an individualized determination by Warden Feather? Yes, that's not at issue. Okay. But also it's an individualized determination if he successfully completes the program, whether he'll even be given the credit for the one year. Isn't that right? Right. So if I can back up for just a second, the first determination in this case, that he's not eligible for community confinement, is absolutely individualized and is not being challenged on appeal. What's being challenged is the result of that determination, which is the implication of the categorical rule. Anybody determined to be ineligible for community corrections may not participate in RDAP. That's a categorical exclusion similar to the exclusion of violent offenders from early release eligibility. But that's ---- Leaving aside his situation in terms of looking at it categorically, categorically doesn't the word normally modify categorically in effect? The ordinarily is with the community corrections determination and doesn't relate to the RDAP. Anybody who is within the class of prisoners who's determined to be ineligible for community confinement is categorically ineligible without individualized consideration. But you have to get to ---- But you have individualized consideration to determine if you're eligible, and that relates to detainers, does it not? That relates to detainers, yes. So it seems to me that ---- I'm just playing with your argument, and the jurisdiction is the same thing, is that you want to slice up the program into pieces where it's a unitary program. What we're challenging is the regulation that prohibits him from participating in RDAP. Okay. That's a categorical rule. All right. Any other questions? Thank you very much. The case just argued, Sanderson v. Feather, is submitted, and I thank both counsel for your argument this morning.
judges: Hawkins, McKeown, Tallman